IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JAMES CLAYTON TERRY                                              PETITIONER

v.                                                         No. 1:10CV319-GHD-SAA

MDOC-LOWDES COUNTY
HOUSE ARREST, ET AL.                                            RESPONDENTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* petition of James Clayton Terry for a writ of *habeas corpus* under 28 U.S.C. § 2254. Terry's initial petition contained unexhausted grounds for relief, and he later filed an amended petition containing a single ground, which he had exhausted in State court. The State has responded to the amended petition, and Terry has replied. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

**Facts and Procedural Posture**

On November 29, 2007, Petitioner Terry was convicted of the charge of "fraud in office" in the Circuit Court of Lowndes County, Mississippi. State Court Record, hereinafter S.C.R., Vol. 1, pg. 61. On November 30, 2007, Terry was sentenced to serve a term of thirteen (13) months in the custody of the Mississippi Department of Corrections (M.D.O.C.) and five (5) years of post-release supervision. S.C.R., Vol. 1, pg. 63. Terry has been discharged from the custody of the Mississippi Department of Corrections after completing his sentence of thirteen (13) months. Terry is currently serving a sentence of five (5) years of probation through the Lowndes County Probation and Parole Office.

He appealed his conviction and sentence to the Mississippi Supreme Court, raising the following ground for relief, (as stated by Petitioner, through counsel):

1. Whether an indictment alleging "embezzlement" or "fraud" occurring over a two-year period is sufficient when it does not give specific dates of embezzlement or fraud, or state what facts constitute the embezzlement or fraud.

The Mississippi Court of Appeals affirmed Terry's conviction and sentence. *Terry v. State*, 26 So.3d 378 (Miss. App. 2009), reh'g denied October 27, 2009, cert. denied January 28, 2010 (Cause No. 2007-KA-02260-COA).

On December 8, 2010, Terry filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. §2254, ECF doc. 1, raising the following grounds for relief:

**Ground One**: Improper Indictment in violation of U.S. Constitution 5th and 6th Amendments.

**Ground Two**: The statute under which I was charged and convicted is unconstitutional under the 5th, 6th and 14th Amendments.

**Ground Three**: There exists issues of material facts not previously heard and presented that require vacation of the sentence.

**Ground Four**: Ineffective assistance of counsel.

On December 21, 2010, the State filed a motion to dismiss Terry's petition for failure to adequately exhaust available state court remedies with regard to Grounds Two, Three and Four, which had never been raised before the state courts. The court denied the State's motion to dismiss Terry's petition without prejudice and ordered him to amend his habeas petition to remove any unexhausted claims. On April 1, 2011, Terry filed his amended petition, raising the following ground for relief:

**Ground One**: Improper indictment in violation of U.S. constitution 6th and 14th Amendment Due Process.

On April 5, 2011, the court ordered the State to answer the allegations contained in Terry's amended petition. The State has submitted its response, and Terry has replied in support of his petition. The matter is ripe for review.

### Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered the sole ground for relief on the merits and decided that issue against the petitioner; hence, this claim is barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless the claim meets one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision

is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to the sole ground of the petitioner's claim.

Nevertheless, under § 2254(d)(2) this ground may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the Mississippi Supreme Court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Defective Indictment

In this case Terry challenges the validity of his indictment. Terry was charged with the crime of "fraud committed in public office" as codified in Miss. Code Ann. § 97-11-31, which reads:

> If any officer, or other person employed in any public office, shall commit any fraud or embezzlement therein, he shall be committed to the department of corrections for not more than ten (10) years, or be fined not more than five thousand ($5,000), or both.

Miss. Code Ann. § 97-11-31.

Terry's indictment closely tracks the language of the § 97-11-31:

> James Terry, late of the County aforesaid, on or about or between January 1, 2004 through the 31st day of December 2005, in the County aforesaid, did unlawfully, wilfully, and feloniously commit a fraud or embezzlement while holding a public office, to-wit: Supervisor of District 4 of Lowndes County, Mississippi, by fraudulently obtaining gasoline and the use of a county owned vehicle for his personal activities, having a total aggregate value of over $500.00, by charging said gasoline to his County Fuelman card and using his county vehicle for personal purposes; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Mississippi.

S.C.R., Vol. 1, pg. 3.

Terry complains that the indictment did not provide him with adequate notice of the charges against him and prevented him from presenting a proper defense. The gravamen of Terry's claim is that the indictment did not provide exact dates for the offense charged; he argues that this "puts me in the unfair and awkward position of having not only to know when I put gas in my own county-issued car and its purposes, but every other vehicle or piece of gas operated equipment I might have used a Fuelman card for during that time period . . . ." Terry also alleges that the indictment did not specify the various uses of the county vehicle the State alleged were impermissible.

The sufficiency of a state indictment is not a matter for federal *habeas corpus* relief unless it can be shown that the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell*, 339 F.3d 308, 313-14 (5th Cir. 2003); *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) (citing *Branch v. Estelle*, 631 F.2d 1229 (5th Cir. 1980)). If the state court has held that an indictment

is sufficient under state law, "a federal court need not address that issue."[1] *McKay*, 12 F.3d at 68 (citations omitted).

The Mississippi Court of Appeals considered this issue on direct appeal and found the indictment to be legally sufficient, noting first that Uniform Rule of County and Circuit Court 7.06 governs the requirements of an indictment. Under this rule, an indictment must contain:

1. The name of the accused;

2. The date on which the indictment was filed in court;

3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;

4. The county and judicial district in which the indictment is brought;

5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;

6. The signature of the foreman of the grand jury issuing it; and

7. The words "against the peace and dignity of the state."

*Uniform Rule of County and Circuit Court* 7.06. The indictment in Terry's case fully complied with this rule. The Mississippi Court of Appeals considered whether the range of dates included in the indictment, January 1, 2004, through December 31, 2005, sufficiently stated the dates during which the illegal activity took place. *Terry*, 26 So.3d at 381, holding:

> In this case, Terry's indictment did not list specific dates on which the offenses occurred. However, the indictment did provide that the offenses were committed between January 1, 2004, through December 31, 2005. In addition, the State provided Terry with its Exhibit 9-a chart that matched the dates that Terry used his Fuelman card to the dates that Terry visited casinos. Terry argues that he did not receive this

---

[1] Though not applicable in the present case, a commonsense exception must exist for a charging instrument so lacking in specificity that a defendant cannot reasonably ascertain which of his actions the State believes to have constituted a crime.

> chart until the day of the trial. However, the record is clear that the State used Terry's Fuelman records and his casino redemption records in preparing Exhibit 9. Terry does not claim that he did not have access to his Fuelman records or his casino redemption records. Thus, Terry could have easily obtained this information from other documents that were provided to him during discovery. Like the reasoning in *Price* [*v. State*, 898 So.2d 641, 654-55(32) (Miss. 2005)], we find that the range of dates provided in the indictment sufficiently put Terry on notice of the charges against him.
>
> Additionally, Terry's embezzlement was a continuous offense. Continuous offenses may "be laid as on one day and proved by acts either on one day or many." *Davis v. State*, 108 Miss. 710, 722-23, 67 So. 178, 180 (Miss 1915). Thus, "[e]mbezzlement, when committed by a series of connected transactions from day to day, may be alleged as on a single day, and the real facts be shown in evidence." *Id.*; *see also Taylor v. State*, 754 So.2d 598, 604 (Miss.Ct.App.2000).
>
> Based on the foregoing, we find that the range of dates provided in the indictment sufficiently put Terry on notice of the charges against him because: (1) the failure to provide a specific date does not render the indictment defective, and (2) since Terry's alleged crime was a continuous offense, it could be proven by acts on either one day or numerous days. We do not find any prejudice to Terry's defense. This argument is without merit.

*Terry*, 26 So.3d at 382.

As to Terry's argument that he was not given proper notice regarding what constituted the improper personal use with which he was being charged, the appellate court noted that "the essential elements of this crime are that: (1) a person holding a public office (2) committed an embezzlement or fraud in his or her public employment" and that the statute does not mention "personal use." *Id.* at 382. The court held:

> Terry's indictment clearly charged that he committed an embezzlement or fraud while holding a public office by fraudulently obtaining gasoline and by the use of a county-owned vehicle for his personal activities. Thus, the indictment sufficiently stated the essential elements of the crime and the acts which constituted the embezzlement or fraud.
>
> Because personal use is not an essential element of the crime, we find that the State was not required to specifically list what activity constituted the personal use. However, the record clearly shows that through discovery, Terry was on notice that his

trips to the casinos constituted the personal use alleged in the indictment. This argument is without merit.

*Id.* at 382-383.

Terry's indictment was clearly sufficient under state law and provided the trial court with jurisdiction over Terry's case. As such, under *McKay*, 12 F.3d at 68, the court is not required to consider this issue on the merits. In any event, a review on the substance of Terry's claims reveals that they are wholly without merit.

### Adequacy of the Indictment to Notify Terry of the Charges Against Him

Terry's claim is that the two-year span of the State's allegations violated his right to due process because it did not adequately apprise him of the specific acts comprising the crime charged. This allegation is without substantive merit for several reasons. First, as the State argued, often, fraud and embezzlement occur in many instances over a period of time and are thus considered under the law to be a single continuing offense. Second, Terry made over 90 trips to the casinos and other places during that two-year period, and Terry, himself was best positioned to determine the time and reason for each trip. He had access to the Fuelman and casino card records, as well as his memory of the trips, numerous though they were. Terry knew the nature of the charges against him – purely personal use of the Fuelman card. He could easily have constructed an aggregation of data as the State did and determined, as best he could, the date, destination, and purpose of each trip. It was his choice not to do so, and that choice does not state a valid *habeas corpus* claim. In any event, as set forth below, the compilation of fuel and gambling records painted a clear picture of misuse of the Fuelman card. As such, the compilation tended to show his guilt, rather than his innocence.

**Strategy and Evidence Presented by the Prosecution and Defense**

The State made clear during discovery that Terry was accused of using his Fuelman card purely for his personal use – on over 90 occasions during a two-year period – primarily by using the fuel purchased with the Fuelman card to drive to and from various casinos for the purpose of gambling and entertainment. A state employee is supposed to use a Fuelman card only to put fuel in a government vehicle. The State analyzed Terry's Fuelman purchases and casino records of his gambling using his casino card. Through use of the casino card, Terry and his wife could accumulate various cash and complementary perquisites ("comps"), such as a free meal or a free night's stay at a casino resort hotel. Though anyone, including Terry's wife, could use his casino card to gamble in his stead, only Terry himself – using picture identification – could redeem cash rewards or "comps." Comparing the times Terry redeemed his rewards and "comps" (showing that he was actually at the casino) to the times and places where he purchased gasoline using his Fuelman card, the State made a compelling case that Terry was using his Fuelman card to fill up a vehicle for traveling to and from various casinos. Computing the distance Terry would have to drive to burn that much fuel (using the amount of gasoline purchased with the Fuelman card and the approximate fuel efficiency of the county vehicle), that distance was very close to the round-trip distance of a drive to and from the casinos. This was true whether Terry had been visiting the casinos in Philidelphia or Tunica.

The State's case was bolstered further by conducting a similar analysis regarding use of his casino card for gambling. Terry and his wife testified that she often used his card while she gambled without him; indeed, she testified that she kept his card in her purse and used it nearly every time she went to the casinos without him. The State, however, produced a record of her gambling activity which proved that when she gambled alone, she *never* used his casino card. She, without fail, used

her own card – exclusively – to gamble. Neither Terry nor his wife suggested that some other person might have used Terry's card to gamble; as such, the jury could reasonably have concluded that Terry, himself, was present when his casino card was in use.

Terry's card was used hundreds of times during the two-year period in question, and he lost many thousands of dollars gambling during that time. Terry's defense was that, though he did use his state-furnished vehicle on occasion to visit the casino, he did so while on official government business nearby. In other words, the casino was on the way to and from his business destination, and the State suffered no harm by virtue of his stopping for gaming and recreation. He testified regarding his efforts to do various things to revitalize the economy in Lowndes County. He wanted to bring in a casino to his county, to build a Memorial Day display, to build a recreation center, and several other projects. The thrust of this testimony was to show that he traveled extensively around the state on official county business – to research how other counties and cities had accomplished building and funding similar projects and what positive influence each project brought to the local economy. The State made several arguments in opposition. First, the State pointed out that, when initially asked about his usage of the Fuelman card, he did not mention most of those reasons. Instead, he said that he went to various places, mostly casinos, on personal trips in his county-owned vehicle. He made such statements on two different occasions, and the interviews were recorded. Second, the State argued convincingly that researching monuments, casinos, and cemeteries could not possibly require over 90 trips over a two-year period. Terry never explained: (1) why this task required so many trips, or (2) what information he gleaned from the trips. This is a glaring omission given his alleged keen interest in initiating and reaching these ambitious goals.

Terry also argued that he took his wife's personal vehicle, rather than the county vehicle, on many of the trips in question. The State, however, showed that, time and again, Terry refueled *some* vehicle during the time he was at the various casinos, whether it was his county vehicle or his wife's personal one, sometimes using enough fuel to drive over 1,000 miles in a week. Though Terry argued that he took his wife's car on those trips, he could not explain why he needed to use the Fuelman card so extensively during the time he was there. In addition, there was a span of more than a month when Terry's wife used her Chevron credit card to refuel her only twice, far less often than usual. This period coincided with a time during which his wife had reached the credit limit of her card and could no longer charge fuel to her card. During this same time period, Terry used the Fuelman card about twice as often as usual. A reasonable juror could conclude that either he was using the county vehicle on his personal trips to the casinos, or that he was filling up his wife's car using the Fuelman card. Either scenario would constitute using the Fuelman card for wholly personal reasons. Also, during the two-year period in question, Terry and his wife lost approximately $39,000 during their visits to the casinos, and the State argued that such losses would leave little money to buy fuel. The State argued that the financial hardship from excessive gambling established motive for Terry and his wife to use the Fuelman card, rather than their own money, to buy fuel.

The State gave Terry adequate notice of the charges against him. Indeed, Terry, himself, was in the best position to determine the dates, times, and reasons for using the Fuelman card and the county vehicle for each trip, and his claims regarding the sufficiency of his indictment are wholly without merit.

For these reasons, the Mississippi Supreme Court's decision upholding Terry's conviction was neither contrary to, nor an unreasonable application of clearly established federal law; nor did it

demonstrate an unreasonable determination of the facts in light of the evidence presented. Therefore, Terry is not entitled to *habeas corpus* relief on the claims raised in his amended petition, and the petition will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 6th day of February, 2014.

/s/ Glen H. Davidson
SENIOR JUDGE